This is a suit for damages arising out of an alleged breach of contract. Plaintiff, Charles W. Harris, is a general building contractor. Defendant, Eugene J. Lillis, is a roofing contractor doing business under the name of "Brandin Slate Company".
Some time prior to August 15th, 1941, plaintiff entered negotiations with a Mr. and Mrs. J.G. West to erect a residence for them an Dartaguette Street in the city of New Orleans. In accordance with the custom of the building trade in New Orleans, plaintiff contacted various subcontractors for the purpose of having them bid on certain parts of the work. Among these subcontractors was the defendant, Lillis, who made a written offer on August 15th, 1941, to furnish and apply a slate roof on the proposed residence for the sum of $300 cash. After receiving this bid from Lillis, plaintiff submitted an offer to the Wests to build the residence contemplated. His offer was accepted by Mr. and Mrs. West on August 23rd, 1941, and the written contract between the parties was recorded in the mortgage office two days later, on August 25th. In connection therewith, plaintiff furnished a performance bond with Columbia Casualty Company as surety thereon, running in favor of Mr. and Mrs. West and all subcontractors and furnishers of materials. On November 28th, 1941, plaintiff addressed a letter to defendant advising him that the West job had progressed to such extent that it was ready for the erection of the slate roof and called upon him to start the job at his earliest possible convenience. Upon defendant's failure to proceed with the work, he was formally placed in default, on December 2d 1941, by letter from plaintiff's attorneys. Thereafter, the roofing work was performed by Consolidated Roofing Company for the price of $662 resulting in a loss to plaintiff of the sum of $357. The instant suit was subsequently instituted against the defendant to recover that amount.
Defendant resists liability to plaintiff on the sole ground that his written offer of August 15th, 1941, did not ripen into a contract for the reason that the bid was withdrawn by him on October 9th, 1941, prior to its acceptance by plaintiff.
After a hearing in the District Court on this issue, there was judgment in favor of plaintiff, as prayed for. Defendant has appealed.
As above stated, the sole question presented for determination is whether defendant withdrew his offer to erect the roof for $300 before plaintiff accepted it. Plaintiff testified that, during the year 1941, he had a number of subcontracts with defendant; that, with respect to the West job, the price for which he agreed to erect the residence was based upon the bids submitted to him by various subcontractors; that it is the custom and understanding in the building trade of New Orleans that all bids made by subcontractors to a general contractor are considered irrevocable unless they are withdrawn prior to the time the general contract is accepted by the owner; that the contract with Mr. and Mrs. West was accepted on August 25th, 1941; that, on or about September 1st, 1941, he formally mailed to the defendant his acceptance of the offer; that, thereafter, he encountered financial difficulties; that his bondsman, Columbia Casualty Company, undertook the completion of his outstanding contracts although he did not formally default on his work and that it was not until after he notified defendant, on November 26th, 1941, to proceed with the roofing job that he was advised that defendant would not comply with the contract.
Plaintiff's testimony is corroborated by the evidence of Mr. Stanley Loeb, a member of the New Orleans bar, who was the representative of Columbia Casualty Company at the time plaintiff became financially embarrassed. Mr. Loeb testified that he spoke to the defendant, Lillis, over the telephone about doing the roofing work; that defendant said "I am not going to do any more work for Harris, because his credit is not good"; that he thereupon explained to defendant that plaintiff's credit was not *Page 691 
involved for the reason that Columbia Casualty Company was taking over plaintiff's responsibilities but that defendant persisted that he would not do the work. He further says that defendant at no time advised him that he had withdrawn his offer but that the only excuse he gave for not performing the job was that plaintiff's credit was not good.
The defense to the suit is based upon a letter dated October 9th, 1941, from defendant to plaintiff, reading as follows:
"Dear Sir:
"I have been waiting for the check that you promised to send us Monday, and so far it has not come. As you do not keep your promises to pay your account, you can get someone else to do your work. If you have any estimates from us you can cancel them because we do not want any more of your business."
Defendant, testifying on his own behalf, denies that he ever received from plaintiff an acceptance of his bid on the West job. He also denies that he had a telephone conversation with Mr. Loeb during the month of November, 1941, concerning his refusal to perform the roofing work on the West job. And, while he asserts that the reason for his failure to comply with his written offer was due to the fact that the offer was withdrawn before its acceptance, he concedes, on cross-examination, that he probably made a mistake in agreeing to do the work for $300, as he now estimates that it would have cost him $416.20 to perform the job and make a ten percent profit.
To support his testimony, defendant called to the stand his salesman and employee, Mr. E.A. Gomez, who made the estimate for the roofing work on the West job and submitted the offer of $300 to plaintiff. Gomez testified that he called on plaintiff on several occasions after the bid was submitted and that plaintiff at no time indicated that the offer had been accepted. However, he admits on cross-examination, that the only reason why defendant would not perform the job was because plaintiff was indebted to him and that defendant told him that he would do the work if plaintiff paid up his account.
[1] It will be seen from the foregoing that the Judge of the lower court was confronted with a conflict of testimony as to whether defendant had withdrawn his written offer to do the roofing work on the West job prior to the acceptance of said offer by plaintiff. After considering the evidence, the judge was evidently of the opinion that plaintiff's testimony, as corroborated by Mr. Loeb, should prevail. We not only fail to find manifest error in his conclusion on this question of fact but are of the opinion that his resolution was correct. It seems most probable that the underlying reason for defendant's failure to perform his engagement was due to the fact that he had erroneously calculated the price for which the West roofing job could be done at a profit and not because plaintiff was indebted to him for work done on other jobs. The record reveals that defendant was fully protected for the payment of any work that he had performed for plaintiff by a $40,000 bond issued by Columbia Casualty Company in favor of the owners, subcontractors and materialmen. Then too, in direct contradiction of defendant's testimony is the evidence of Mr. Loeb that, during telephonic conversations with defendant in November, 1941, the latter at no time stated that he had withdrawn his offer on the West job but that he refused to perform the work solely and only because plaintiff was indebted to him.
[2] Moreover, it seems manifest that, in accordance with the custom prevailing in the building trade in New Orleans, an offer by a subcontractor to a general contractor to do work is irrevocable after the contractor has used the estimate of the subcontractor as a basis for his offer to the owner and the owner has accepted the general contractor's bid. Here it is shown that plaintiff's bid to Mr. and Mrs. West to erect their dwelling was accepted on August 25th, 1941, and that the contract was recorded on August 28th, long before defendant made the alleged attempt to withdraw his offer. Once this bid was accepted by the owner of the property it was too late for the subcontractor to withdraw and the contractor had a reasonable time thereafter within which to call upon the subcontractor to perform. In this connection, it is to be observed that defendant's employee, Gomez, admitted that the bids made by defendant for roofing work were irrevocable for a period of at least 30 or 60 days.
[3] After all, it appears to us that this case is one where the subcontractor seeks to recant from his engagement because he made a mistake in offering to do the work for an unprofitable price. It is clear that such a defense cannot be countenanced. *Page 692 
See Schorr v. Nosacka, 16 La. App. 20, 132 So. 524 and Reimann Construction Co. V. Heinz, 17 La. App. 687, 137 So. 355.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.